**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JOANNE FESSETTE, as parent and natural guardian of
JF, a minor,

         Plaintiff,

 - v -              Civ. No. 6:03-CV-1004
                   (TJM/RFT)
MICHAEL J. ASTRUE, Commissioner of Social
Security,[1]

         Defendant.
_____

**APPEARANCES:**              **OF COUNSEL:**

LAW OFFICE OF LORI CANTWELL      LORI A. CANTWELL, ESQ.
Attorney for Plaintiff
178 Broad Street
Plattsburgh, NY 12901

HON. GLENN T. SUDDABY         WILLIAM H. PEASE
United States Attorney for the Northern District of New York Assistant United States Attorney
Attorney for Defendant
P.O. Box 7198
100 South Clinton Street
Syracuse, NY 13261

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

   In this action, Plaintiff Joanne Fessette, as parent and natural guardian of JF, a minor, moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her daughter's application for Supplemental Security Income (SSI).[2] Based upon the following

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 7 & 9. The matter was referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

discussion, this Court recommends that the Commissioner's decision denying Social Security benefits be **affirmed**.

## I. BACKGROUND

### A. Facts

JF, born on June 23, 1988, was eight years old at the time an application for SSI was filed on her behalf. Dkt. No. 6, Admin. Transcript [hereinafter "Tr."] at p. 109. The Court adopts the facts as set forth by the Plaintiff in her Brief under the headings "STATEMENT OF THE CASE" and "STATEMENT OF FACTS" with the exception of any conclusions or inferences included thereto. Dkt. No. 7, Pl.'s Br. at pp. 1-7. Generally, JF alleges a disability due to Tourette's syndrome, attention deficit hyperactivity disorder (ADHD), obsessive compulsive disorder (OCD), impulse control disorders, a learning disorder, and generalized anxiety disorder. *Id.* at p. 16.

### B. Procedural History

On May 14, 1996, Joanne Fessette, on behalf of her minor daughter, protectively filed for SSI benefits alleging a disability onset date of February 20, 1995. Tr. at pp. 109-23. The application was denied initially and on reconsideration. *Id.* at pp. 23-27 & 30-33. On July 30, 1998, a Hearing was held before Administrative Law Judge (ALJ) Hastings Morse, and on September 1, 1998, the ALJ issued an unfavorable decision finding JF was not entitled to benefits. *Id.* at pp. 54-63 & 444-57. On August 10, 2001, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's decision, and remanded the case back to the ALJ level. *Id*. at pp. 78-80. Of particular concern to the Council was whether JF suffered from Tourette's syndrome and the absence of any physician opinion regarding the severity of limitations caused by such impairment, or any other impairment. *Id*. at p. 79. Thus, on remand, the Appeals Council directed the ALJ to 1) obtain additional evidence concerning the

claimant's impairments; 2) obtain evidence from a medical expert to clarify the nature and severity of JF's impairments; and 3) provide a thorough evaluation and exact assessment of the claimant's functional limitations. *Id.* at pp. 79-80.

Thereafter, a second Hearing was held on January 23, 2002, before ALJ Terrance Farrell, which was subsequently adjourned until May 7, 2002, in order to hear the testimony of a medical expert. *Id.* at pp. 458-589. On July 18, 2002, ALJ Farrell issued an unfavorable decision against Plaintiff and her daughter. *Id.* at pp. 13-22. On June 13, 2003, the Appeals Council concluded that there was no basis under the Regulations to grant Plaintiff and her daughter's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id.* at pp. 1A-3. Exhausting all her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

In this appeal, this Court must determine whether the ALJ applied the correct legal principles and whether substantial evidence supports the Commissioner's decision that JF was not disabled from May 14, 1996, her SSI application date, through July 18, 2002, the date of the ALJ's decision.[3]

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support

---

[3] SSI benefits are only available from the date of the application. 20 C.F.R. § 416.330.

a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

On August 22, 1996, Congress enacted the Personal Responsibility and Work Opportunity Reconciliation Act, which modified the standards for determining whether a child is eligible for SSI disability beneftis. *See* Pub. L. No. 104-193, 110 Stat. 2105 (1996) (codified as amended, 42 U.S.C. § 1305 *et seq*). To qualify for disability benefits under the Act, an individual

> under the age of 18 shall be considered disabled . . . if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).

The Act does not require that the severity of a child's impairment be of comparable severity to that of a disabled adult. In order to determine if a child is disabled, the ALJ must proceed with a three-step analysis. *See* 20 C.F.R. § 416.924(a). The first step requires the ALJ to consider whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is so engaged, he or she will not be awarded SSI benefits. *Id.* If the child is not engaged in substantial gainful activity, the ALJ next considers the child's physical and mental impairments to determine whether they are severe. 20

C.F.R. § 416.924(c). If there is no medically determinable impairment or if there is only a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations, the child will not be considered disabled. *Id.* If a severe impairment is found, the ALJ must consider whether the impairment meets or is medically or functionally equal in severity to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *See* 20 C.F.R. §§ 416.924(c) & (d).

### C. ALJ Farrell's Findings

Joanne Fessette, JF, Susan Legacy (case worker), and David Horenstein, Ph.D. (medical expert) testified at the Hearing before ALJ Farrell. Tr. at 458-589. In addition to such testimony, the ALJ had JF's school records, standardized testing results, case studies, and medical records, consisting of treatment reports and opinions from various treating and/or examining/non-examining physicians, including, but not limited to 1) Sudha Patel, M.D., Treating Pediatrician; 2) Edward J. Mazdzer, M.D., Treating Psychiatrist; 3) Edward S. Emery, III, M.D., Neurological Evaluator; 4) Lewis Mehl-Madrona, M.D., Ph.D., Pediatric Psychopharmacology Evaluator; 5) Julie Reynolds Jock, School Psychologist; 6) Bobbi Terry, CSW, Psychiatric Social Worker; 7) David C. Hinsman, M.D., Psychiatrist; 8) John Schenkel, M.D., Psychiatrist; 9) Karen Glushko, School Psychologist; 10) Lisa Eaffaldano, CSW, Senior Mental Health Clinician; 11) Sally Summerell, Ph.D., Agency Consultive Examiner; and 12) Susan Legacy, Case Worker. *See generally id.* at pp. 163-443.

Using the three-step disability evaluation, ALJ Farrell found that: 1) JF had not engaged in any substantial gainful activity since February 20, 1995, the alleged onset disability date; 2) she has a severe, medically determinable impairment or combination of impairments, namely Tourette's syndrome, ADHD, OCD, impulse control disorder, a learning disorder, and generalized anxiety disorder; and 3) her severe impairments do not meet, medically equal, or functionally equal any of the

impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4, and, therefore, JF is not disabled. *Id.* at pp. 21-22.

### D. Medical Expert Testimony

Plaintiff, on behalf of her daughter, contends that the ALJ's decision denying benefits should be reversed because the ALJ did not properly evaluate the opinion of the medical expert, Dr. Horenstein. Dkt. No. 7, Pl.'s Br. at pp. 7-10. Specifically, Plaintiff asserts that the ALJ incorrectly relied upon Dr. Horenstein's opinion that Fessette did not suffer from Tourette's syndrome when such opinion was contrary to the diagnosis of JF's treating psychiatrist, Dr. Mazdzer. *Id.*

At the Hearing, Dr. Horenstein testified that upon his review of the medical record, he found ample support for the ADHD diagnosis in light of the fact that such impairment had been consistently observed and reported by virtually every evaluator who met with JF. Tr. at p. 552. However, Dr. Horenstein controverted Dr. Mazdzer's diagnosis of Tourette's syndrome claiming that the diagnosis was rendered solely from the child's history as recounted by Joanne Fessette and was not based upon any first-hand observation. *Id*. In response to such testimony, Plaintiff provided the ALJ with an updated medical opinion from Dr. Mazdzer defending his diagnosis. *Id*. at pp. 437-40.

We can immediately lay to rest Plaintiff's argument in this regard since at Step Two, the ALJ clearly found, despite Dr. Horenstein's expert testimony, that JF suffered from Tourrette's Syndrome, an impairment the ALJ found to be severe. *Id*. at p. 21. Thus, there was no improper reliance or improper use of the expert's testimony as to the existence of a severe impairment.

It appears that Plaintiff also challenges the ALJ's reliance on Dr. Horenstein's testimony as to the "degree of disability" imposed by JF's ADHD. Pl.'s Br. at p. 10. Again, we believe that the ALJ's determination of this issue weighed in Plaintiff's favor as he clearly found at Step Two that JF suffered

from ADHD, another severe impairment.

### E. Functional Equivalence

After reviewing Plaintiff's Brief, it is this Court's impression that Plaintiff's challenges seem to center around the two arguments propounded above, that is, the misuse of the expert opinion in establishing the existence of severe impairments. Notably, Plaintiff seems to use the term "impairment" synonymously with "disability" as does she seem to confound the concepts of severity with functional impairment. Though it is not overtly addressed by Plaintiff, to the extent we may have misconstrued Plaintiff's Brief, we also review the ALJ's Step Three functional equivalence analysis to determine whether the correct legal principles were applied and whether the findings are supported by substantial evidence.

In determining whether an impairment is functionally equivalent to a listed impairment, the ALJ must assess the child's developmental capacity in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. §§ 416.926a(b)(1)(i)-(vi). If the child has marked limitations in two domains or an extreme limitation in one domain, then the child's impairment is functionally equivalent to a disability in the Listings. 20 C.F.R. § 416.926a(d). Under the Regulations, a marked limitation generally means that a child's

> impairment(s) interferes seriously with [his or her] ability to independently initiate, sustain, or complete activities. [The claimant's] day-to-day functioning may be seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Marked" limitation also means a limitation that is "more than moderate" but "less than extreme."

20 C.F.R. § 416.926a(e)(2)(i).

An extreme limitation is generally found when the child's

>  impairment(s) interferes very seriously with [his or her] ability to independently initiate, sustain, or complete activities. [The] day-to-day functioning may be very seriously limited when [the] impairment(s) limits only one activity or when the interactive and cumulative effects of [the] impairment(s) limit several activities. "Extreme" limitation also means a limitation that is "more than marked". . . . [but] does not necessarily mean a total lack or loss of ability to function.

20 C.F.R. § 416.926a(e)(3)(i).

In rendering the functional assessment, the ALJ considered the opinions of Dr. Horenstein, Dr. Summerall, Susan Legacy, JF's testimony, Joanne Fessette's testimony, the objective medical evidence, and other evidence of record. Tr. at pp. 18-19. In summary, the ALJ made the following findings for each domain:

>  (1) acquiring and using information — less than marked limitation in function;
>
>  (2) attending and completing tasks — less than marked limitation in function;
>
>  (3) interacting and relating with others — marked limitation in function;
>
>  (4) moving about and manipulating objects — less than marked limitation in function;
>
>  (5) caring for yourself — less than marked limitation in function; and
>
>  (6) health and physical well-being — less than marked limitation in function.

In reviewing each of the six domains, the ALJ noted that JF's treating psychiatrist, Dr. Mazdzer, did not provide a specific opinion regarding JF's abilities or degree of functional limitations. Tr. at p. 18. The ALJ then indicated that Dr. Horenstein's opinion is accorded weight to the extent it is well-supported and consistent with other medical opinions. *Id*. Ultimately, the ALJ agreed with Dr. Horenstein's opinion that on occasion JF's impairments resulted in marked or serious limitations. *Id*. Nevertheless, the ALJ expressed that the "episodic nature" of JF's impairments did not occur frequently enough or for a prolonged period of time in which overall marked limitations resulted, other than in the area of social functioning. *Id.*

The ALJ also considered the opinions expressed by the Agency examining psychologist, Dr. Summerell, with respect to her objective evaluation of JF's degree of functional limitations. *Id.* The

ALJ noted that although Dr. Summerell did not find JF had any marked limitations, she found moderate limitations in JF's interaction with peers. *Id*. at pp. 18-19. The ALJ found that Dr. Summerell's report suggests that JF's "erratic behavior and uncontrollable anger are the most functionally limiting of her impairments." *Id*. at p. 19. The ALJ further considered the testimony rendered by Joanne Fessette and case worker Susan Legacy. He found such testimony to be fairly credible, but did not establish marked limitations in any other area besides social functioning. *Id*. at p. 19. He noted that both the mother and case worker only observed JF's behavior out of school and that JF's academic performance belied some of their statements about her problems in school. *Id.* The ALJ additionally took into account the fact that there was a lack of treatment for approximately five years and that JF seemed to respond well to therapy. Based on all the evidence, the ALJ afforded evidentiary weight to the opinions of Summerell and Horenstein in regards to JF's functional limitations because they were consistent with the evidence. *Id.* It was proper for the ALJ to accord such weight under the Regulations. 20 C.F.R. § 416.927(f)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, [an ALJ] must consider findings of State agency medical and psychological consultants . . . as opinion evidence."); *see also* 20 C.F.R. § 416.927(f)(iii) (noting that an ALJ may consider opinions from medical experts on the nature and severity of a claimant's impairments as well as medical or functional equivalence). A brief summary of each functional domain follows.

### 1. Acquiring and Using Information

The first domain, acquiring and using information, addresses how well a child learns information and how well the child uses the information learned. 20 C.F.R. § 416.926a(g). The ALJ found that despite her learning difficulties and the fact that her achievement scores were a grade or two

below level, most of JF's test scores fell within the average range. *Id.* at p. 19. The ALJ stated that JF had less than a marked limitation in function in this category. *Id.* In 1995, Ronald Dumont, a psychologist, noted JF's test scores were below average to average. *Id.* at pp. 163-68. Testing conducted in 1997 revealed that JF had average cognitive, verbal, and performance abilities and that her overall abilities were in the normal range. Although the school psychologist questioned whether retention was appropriate, at her mother's urging, JF repeated the third grade *Id.* at pp. 200-03 & 210-12. In May 2000, it was noted that JF had difficulties with language processing tasks, but she was getting better due to supportive services and there was significant improvement in managing her distractive behavior and attention to instruction. *Id.* at 387-89. Based on the record, the ALJ's statement that JF had less than a marked limitation in function in this category is supported by substantial evidence.

## *2. Attending and Completing Tasks*

The second domain, attending and completing tasks, involves an analysis of how well a child is able to focus and maintain attention. 20 C.F.R. § 416.026a(h). It also refers to how well a child begins, carries through, and finishes activities. *Id*. In this domain, the ALJ noted less than marked limitation in that her impairments did not seem to be seriously interfering with her functioning in this area. Tr. at p. 19. The ALJ acknowledged JF's history of ADHD and the difficulties she experiences in organizing work, starting assignments, and completing tasks; however, this condition is not treated with medication and there does not appear to be a correlative affect on her achievement scores. *Id*. at pp. 19-20. In school, JF received help in a resource room, is not otherwise in special education, and seemed to be doing better. *Id.* at pp. 19-20. The school psychologist who evaluated JF in May 2000 reported steady and consistent improvement due to supportive services and a "positive work ethic."

*Id.* at pp. 387-89. Significant improvement in managing her distractive behavior and attention to instruction was similarly reported, with the notation that JF "has learned to take her time to be more effective . . . . and has gotten better at monitoring herself." *Id*. at p. 386. Based upon the record, the ALJ's assessment of this category is supported by substantial evidence.

### 3. Interacting and Relating to Others

The third domain, interacting and relating to others, considers how well a child initiates and sustains emotional connections with others, cooperates with others, complies with rules, responds to criticism, and respects others' possessions. 20 C.F.R. 416.926a(i). In this domain, the ALJ found that JF had marked limitations due to her impulsiveness and inappropriate behavior, with her main problem being "behavioral discontrol," as expressed by Dr. Mazdzer. *Id.* at pp. 20 & 439. The ALJ acknowledged JF's history of difficulty with self-esteem and social functioning, anger problems, temper outbursts, and isolation. *Id*. at p. 20. However, he did not find an extreme limitation because reports from 1996 indicated treatment goals were met and there was no significant treatment until 2001, at which time notes suggested there was progress. Aside from some disciplinary problems in school, there was no record of ongoing problems, nor any record of hospitalization or residential placement. *Id.* Accordingly, the ALJ's assessment that JF suffered from marked limitations in this category is supported by the evidence. *See generally id.* at pp. 163-443.

### 4. Moving About and Manipulating Objects

In the fourth domain, moving about and manipulating objects, the ALJ evaluates how well a child moves his or her body and other objects, also referred to as gross and fine motor skills. 20 C.F.R. § 416.926a(j). In this domain, the ALJ found less than a marked limitation because JF's tic disorder did not interfere with her motor functioning and there were no limitations in standing, walking, and

using her arms and hands. *Id.* at p. 20. In 1996, Dr. Emery noted that any related symptoms from JF's Tourette's syndrome were not major problems, but instead a lack of attention in school, an inability to sleep, and difficulty with peer relations were more pressing issues. *Id.* at pp. 183-84. This conclusion was echoed by Dr. Mazdzer who commented that JF's tic disorder was the "least" of her worries. *Id*. at p. 439. Moreover, there was no evidence in the record to show that JF had any limitations in moving, standing, walking, or manipulating objects. Thus, substantial evidence in the record supports the ALJ's functional assessment in this domain.

### 5. Caring for Yourself

The fifth domain, caring for yourself, examines how well the child maintains a healthy emotional and physical state and how well the child copes with stress and/or changes in environment. 20 C.F.R. § 416.926a(k). In this case, the ALJ found JF had a less than marked limitation. The ALJ noted that JF's self care is not as good as it could be. The biggest problem noted is inappropriate behavior, such as self-stimulation or self-abusive behavior like incessantly biting the inside of her mouth or scratching her body due to skin sensitivity to clothing. Her room is also reported to be sloppy. But these behaviors are being dealt with and JF does not have significant problems in school with these behaviors nor have the problems been so persistent and pervasive as to seriously interfere with her functioning. *Id.* at p. 21. Although JF's case manager and mother noted she had difficulties in remembering to do certain tasks to take care of herself, the record and JF's own testimony show that she was capable, on some level, of taking care of herself and her possessions and she compensates her forgetfulness by making daily task lists for herself. *See generally id.* at pp. 163-443 & 463-535. Plaintiff has also been mindful of the clothing purchased for JF and removes labels from clothing. *Id*. at pp. 452 & 478. In light of the above, the ALJ's determination in this domain is supported by

substantial evidence in the record.

### *6. Health and Physical Well-being*

In the final domain, health and physical well-being, the ALJ considers the cumulative physical effects of medical or psychiatric conditions and the effects of associated treatment or therapies. 20 C.F.R. § 416.926a(l). In this domain, the ALJ found there was less than a marked functional limitation because even though there was a history of ear infections which resulted in minor hearing loss, the medical evidence and testimony failed to establish a serious hearing impairment. Tr. at p. 21. This statement is supported by the evidence in the record. Tr. at pp. 171-72, 177, 390-404 & 412-16.

### III. CONCLUSION

In light of the foregoing discussion, it is clear that in finding JF was not disabled, the ALJ applied the correct legal standards and his factual findings are supported by substantial evidence. Thus, this Court recommends that decision be upheld.

**WHEREFORE**, it is hereby

**RECOMMENDED**, that the Commissioner's decision denying disability benefits be **AFFIRMED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV.

P. 72, 6(a), & 6(e).

Date:   January 24, 2008
        Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge